UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GREGORY J. BENNETT,<br><br>　　　Plaintiff,<br><br>v.<br><br>JOHN KEAST, *et al.*,<br><br>　　　Defendants. | Case No.: 3:17-cv-00525-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE**<br><br>Re: ECF No. 26 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 26, 26-1 to 26-11.) Plaintiff filed a response. (ECF No. 35.) Defendants filed a reply. (ECF No. 36.)

After a thorough review, it is recommended that Defendants' motion be granted because Plaintiff failed to exhaust his administrative remedies prior to filing his amended complaint.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 4.) The

events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are NNCC Nursing Director John Keast and NNCC Specialty Care Nurse Melissa Mitchell.

On screening, Plaintiff was allowed to proceed with an Eighth Amendment deliberate indifference to medical care claim against Keast and Mitchell.

Plaintiff alleges that he was a tonsil cancer patient, and his cancer had spread to his lymph nodes. (ECF No. 4 at 4.) He received radiation treatment on his throat in addition to chemotherapy. (*Id.*) He claims the radiation treatment severely damaged his throat, making it impossible to swallow normally prepared food items. (*Id.*) His doctors at the cancer clinic prescribed him a medical, blended diet as well as Biotene mouthwash to moisten his mouth and throat during mealtime so he could swallow the blended meals. (*Id.* at 5.)

Plaintiff avers that Mitchell was directly responsible for providing Plaintiff with both the blended, medical diet and the mouthwash. (*Id.*) She knew he suffered from severe hunger and dry mouth, and that he was rapidly losing weight without these things. (*Id.* at 6.) Mitchell failed to provide him the prescribed diet and Biotene. (*Id.*) As a result, he suffered from severe hunger and weight loss which caused his cancer doctors to stop his cancer treatments and put him in the intensive care unit. (*Id.* at 4, 6.)

Plaintiff alleges that Keast was responsible for ensuring Mitchell obtained Plaintiff's Biotene and blended, medical diet, and had knowledge that Mitchell failed to provide these things to Plaintiff, yet failed to intervene or make sure they were provided. (*Id.* at 6-7.)

Defendants argue they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies; (2) they did not violate Plaintiff's Eighth Amendment rights

as he was given adequate medical care and they did not personally participate in the alleged constitutional violations; and (3) they are entitled to qualified immunity.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable

or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted).

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016)).

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*.

4

(quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

**B. Administrative Regulation 740**

NDOC's Administrative Regulation (AR) 740 governs the grievance process that inmates must utilize in order to exhaust administrative remedies within Nevada's prison facilities. (ECF Nos. 26-6, 26-7.) An inmate must try to informally resolve his issue, and then proceed through three levels of the formal grievance process: the informal, first and second levels. An inmate may also file an emergency grievance, and if it is deemed not to be an emergency the inmate may file a grievance appeal commencing at the informal level.

**C. Analysis**

Plaintiff filed an emergency grievance on August 8, 2017, stating that on July 24, 2017, his oncologist prescribed him Biotene and a blended diet, but it was refused. (ECF No. 26-8 at 2.) The grievance was denied as a non-emergency, noting that the medicated mouthwash was approved and was being ordered. (*Id.*) Plaintiff signed the emergency grievance indicating he disagreed with the response. Consistent with AR 740, the form advised Plaintiff that in the event he disagreed, he could pursue a formal grievance. (*Id.*)

Plaintiff filed his in forma pauperis application and proposed complaint on August 28, 2017. (ECF Nos. 1, 1-1.) He filed his amended complaint on November 1, 2017. (ECF No. 4.)

1       Plaintiff also filed his informal level grievance on November 1, 2017, 20063056975, stating that Keast and Mitchell had knowledge his throat was damaged from radiation treatments, and that his doctors from the cancer clinic had prescribed him Biotene mouthwash and a blended medical diet. (ECF No. 35 at 24-26.) He went on to state that Keast and Mitchell failed to provide the Biotene or blended diet, leaving him to starve and be placed in the infirmary for malnutrition and placement of a feeding tube. (*Id*.) The informal level response stated that his Biotene order was increased to two bottles a month on December 5, 2017; the requested mechanical soft diet was ordered on December 1, 2017, and approved on December 12, 2017; he was receiving two Ensure cans three times a day; and, he was within a normal weight limit. (*Id*. at 23.)

        Plaintiff submitted a first level grievance on January 18, 2018, disagreeing with the informal level response. (ECF No. 35 at 22.) The first level response stated that he received Biotene on December 5, 2017, and the medical diet was approved on December 12, 2017. (*Id*. at 21.)

        Plaintiff submitted a second level grievance on April 10, 2018, stating that the prior response did not address the delay in treatment. (ECF No. 35 at 18-20.) The response advised him that he received the diet as ordered in a timely manner, and that the Defendants went out of their way to make sure he had his oral rinse. (ECF No. 35 at 17.)

        Defendants argue that Plaintiff did not properly exhaust his administrative remedies because he did not complete the grievance process before filing suit.

        Plaintiff, on the other hand, claims that administrative remedies were unavailable to him. He argues that as a result of Defendants' deliberate indifference to his medical needs he was too physically and mentally weak to access the prison's grievance procedure. (ECF No. 35 at 3, 9 ¶¶ 1-2.) He contends that as soon as he was recovered, he exhausted his administrative remedies,

6

pointing to his completion of grievance 20063056975 through the second level. (ECF No. 35 at 4.)

Plaintiff's claim that he was too physically and mentally weak to access the prison's grievance procedure is contradicted by the fact that he was able to file an emergency grievance on August 8, 2017.

Even if the court were to assume that Plaintiff was unable to utilize the grievance procedure until he had recovered and initiated the formal grievance process on November 1, 2017, the PRLA requires proper exhaustion *prior to* initiation of the lawsuit. 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050-51 (9th Cir. 2006); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam); *see also Cano v. Taylor,* 739 F.3d 1214 (9th Cir. 2014) (exhaustion satisfied where claims that arose prior to filing of initial complaint were fully exhausted between filing of initial complaint and amended complaint). Plaintiff only *initiated* the grievance process on November 1, 2017, the same day he filed his amended complaint. His second level grievance was not even submitted until April 18, 2018; therefore, it cannot be said that he completed the grievance process so as to exhaust his administrative remedies *prior to* the filing of the amended complaint. As a result, Defendants' motion should be granted.

In light of this conclusion, the court need not reach Defendants' arguments regarding the merits of Plaintiff's Eighth Amendment claim or qualified immunity.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 26).

///

///

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: November 28, 2018.

*/s/ William G. Cobb*
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE